IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROY BROWN,

     Petitioner,

v.                                                              No. 21-CV-1043 JB/JFR

ATORNEY GENERAL OF THE
STATE OF NEW MEXICO, and
MAJOR HORTON, Warden,

     Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1] REGARDING § 2254 PETITION AND MOTION TO AMEND

**THIS MATTER** comes before the Court on Petitioner Roy Brown's *Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody*.  Doc. 1.  Respondents filed an Answer, and Petitioner filed his reply.  Docs. 14, 18.  Petitioner also filed a motion to amend, Doc. 16, to which Respondents filed their response.  Doc. 17.  Having carefully reviewed the record,[2] the parties' submissions and the relevant law, and for the reasons set forth herein, the undersigned finds that the Petition is not well-taken.  I also find that Petitioner's motion to amend his § 2254 Petition should be denied.  Accordingly, I conclude and recommend that the Petition be denied with prejudice and recommend against issuing a Certificate of Appealability.

---

[1] The presiding judge referred this matter to the undersigned by Order of Reference "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *See* Doc. 3.

[2] The record in the action consists of the Petition, Doc. 1, and supporting documents.  Docs. 1-1 through 1-12. Respondents have submitted their Answer, Doc. 14, with supporting documents.  Docs. 14-1 through 14-2.  The Court notes that within the Answer's numerous attachments are individual Exhibits (i.e. Exhibits A-CC).  The Court will cite to documents in the record by their respective ECF document and page number, as reflected in the Court's ECF docket.

## FACTUAL BACKGROUND

On June 24, 2016, a grand jury issued a superseding indictment charging Petitioner in five counts: criminal sexual penetration (first degree)(mental anguish)(2 cts); aggravated battery (great bodily harm); aggravated burglary (commits battery); and resisting, evading or obstructing an officer (arrest). Doc. 14-1 at 5-9. The events alleged in the superseding indictment occurred on or about June 16, 2016 in Roosevelt County, New Mexico.

The case stems from a violent sexual assault that occurred on June 15 or 16, 2016, when the victim awoke to find a man, whom she later identified as Petitioner, physically and sexually assaulting her. The victim stated that the man smothered her with a pillow, grabbed her by the throat, hit her with a bottle, and penetrated her vaginally with his penis and anally with his finger, and attempted to penetrate her with the bottle. The victim noted the individual spoke English, had a bald or shaved head and a large mouth and big lips. The victim struggled to fight off her attacker, and was allowed to use the bathroom. After distracting the attacker, the victim managed to escape by running out of the trailer to a neighbor's residence. The neighbor allowed the victim into her residence and called the police, and law enforcement officers arrived within minutes.

Upon arrival and observing the victim, officers called for medical services, and by speaking to the victim were able to obtain a description of the perpetrator. Two officers went to the victim's trailer to conduct a protective sweep, and when they were inside the victim's residence, one officer noticed a man outside in a tank top shirt and boxer shorts. Officers immediately contacted the man, who appeared to have fresh scratches, and generally matched the description provided by the victim. The man, subsequently identified as the Petitioner Roy Brown, was heavily intoxicated and belligerent. The victim immediately identified the

perpetrator upon seeing a photograph of him.  After a struggle with officers which required the use of a Taser device, Mr. Brown was arrested.

An investigation ensued, which included the collection of various items.  Officers recovered the bottle of liquor, surveillance video from the liquor store that showed Petitioner purchasing a bottle of liquor earlier in the evening, a sexual assault examination of the victim that detailed evidence of trauma consistent with forcible, non-consensual sexual assault, and an examination of Petitioner that revealed abrasions and lacerations on his forearms, chest, lower abdomen and legs.  DNA samples and other evidence were collected from the victim and the Petitioner; according to a forensic scientist who testified at trial, the victim's DNA was located on samples taken from Petitioner.

## PROCEDURAL HISTORY

The case proceeded to jury trial[3] in the Ninth Judicial District Court on September 11, 2017, and after six days of testimony the jury returned guilty verdicts on all counts.  Doc. 14-1 at 22-26.  Prior to sentencing, the State of New Mexico filed a Supplemental Criminal Information, notifying the Court and Petitioner that it intended to apply the habitual offender enhancement.  Doc. 14-1 at 27-54 ("Supplemental Criminal Information" and "Amended Supplemental Criminal Information").  The matter came before the district court for sentencing on February 6, 2018, and the state judge imposed sentence of forty-four (44) years.  Doc. 14-1 at 55-58.  Petitioner timely appealed.

The New Mexico Court of Appeals issued its Memorandum Opinion on April 23, 2020, affirming the convictions.  Doc. 14-1 at 146-163.  The New Mexico Supreme Court denied the

---

[3] Respondents have lodged with the Court digital recordings of the six-day jury trial that took place in the Ninth Judicial District Court from September 11-18, 2017.  *See* Docs. 15, 19 (Lodging of Jury Trial CDs).  The Court will cite to the particular CD by date and, as appropriate, the pinpoint time or time range (e.g. "CD 09/13/17 at 9:42:35").

Petition for Writ of Certiorari, Doc. 14-1 at 180-181, after which Petitioner filed his Petition for Writ of Habeas Corpus in the Ninth Judicial District Court.  Doc. 14-1 at 182 et seq.  The district court reviewed a "Pre-Appointment Review" completed by the Habeas Unit of the Law Offices of the Public Defender and concluded the "Petition is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense", found that the petition lacks merit and that Petitioner was not entitled to relief as a matter of law, and summarily dismissed the petition.  Doc. 14-2 at 64-66.  Petitioner sought a writ of certiorari from the New Mexico Supreme Court, Doc. 14-2 at 67-173, which was denied on July 9, 2021.  Doc. 14-2 at 174.  Petitioner then filed the instant § 2254 Petition in this Court on October 28, 2021.

Petitioner presents three arguments for granting the petition:

- <u>Ground One</u>:        Sufficiency of DNA Evidence

- <u>Ground Two</u>:        Newly Discovered Evidence

- <u>Ground Three</u>:      Ineffective Assistance of Counsel

In Ground One, Petitioner alleges that there was insufficient evidence to support the convictions for criminal sexual penetration, aggravated battery, and aggravated burglary. Petitioner asserts that DNA evidence exonerates him, but the actual physical copy of the results were not provided to the jury.  Petitioner notes that his fingerprints were not found on the liquor bottle allegedly used in the assault, that the oral swab of the victim was negative for the presence of Petitioner's DNA, and that cross-contamination occurred due to faulty collection techniques. Doc. 1 at 19-21.

In Ground Two, Petitioner argues that newly discovered evidence which was presented to the state habeas court throws significant doubt on the case agent's credibility.  Petitioner claims that the case agent, who was the first deputy sheriff on scene, was arrested in July 2020 for

criminal conduct that occurred before the arrest of Petitioner in this case.  Petitioner also claims

that officers conducted an illegal search and seizure of items from the Petitioner, which seizure

occurred before the warrant to authorize said search and seizure had been signed.  Petitioner

argues that the lead deputy sheriff failed to perform duties "within the scope of his training", by

using a Taser device on Petitioner when he was not certified to do so.  Doc. 1 at 22-23.

In Ground Three, Petitioner claims ineffective assistance of counsel.  Petitioner argues

that trial counsel (1) failed to discover the illegal search and seizure issue during trial, (2) failed

to present an adequate defense regarding an allegedly illegal interrogation "when sheriffs

performed an illegal interrogation on the petitioner", (3) failed to highlight at trial that another

man was present at the scene of the incident, and that (4) appellate counsel had minimal

communication with Petitioner.  Petitioner also claims that (5) trial and appellate counsel

"hindered" Petitioner by not providing discovery materials which impacted both his state and

federal habeas petitions.   Doc. 1 at 24-25.

Subsequent to filing his reply, Petitioner filed a motion to amend and delete the

unexhausted claims in his § 2254 Petition.  Doc. 16.  Specifically, Petitioner seeks to amend the

caption of Ground 1 to read "DNA Evidence" rather than "Sufficiency of the Evidence".  As to

Ground 2's "Newly Discovered Evidence", Petitioner seeks to delete the argument regarding

illegal search and seizure.  Respondents object to these amendments, stand by their answer, and

ask the Court to ignore non-exhaustion and deny the motion to amend and deny the Petition on

the merits.  Doc. 17.  Petitioner does not seek to amend Ground 3.

## **LEGAL STANDARDS**

The Antiterrorism and Effective Death Penalty Act of 1996:  The statutes governing

federal habeas corpus actions for state and federal prisoners were substantially amended by the

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996.  Pub. L. No. 104–132, 110 Stat. 1214.  Petitioner is a New Mexico prisoner seeking federal habeas relief, so his habeas petition is governed by the AEDPA's amendments. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997) (AEDPA's amendments apply to habeas petitions filed after the AEDPA's effective date of April 24, 1996); *see also* Doc. 14 at 8 (conceding that Petitioner satisfied the "in custody" requirement of AEDPA).  AEDPA sets a strict time limit to file for federal habeas relief, *see* 28 U.S.C. § 2241(d)(1), which Respondents concede has been met in this case.  *See* Doc. 14 at 7, fn. 7.  Finally, federal courts are to presume that the factual findings of the state court are correct, and petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Under the AEDPA, federal habeas corpus relief is proper only when the state court's adjudication of a federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In ascertaining whether the law is clearly established, the Court reviews Supreme Court holdings extant when the state court conviction became final.  *House v. Hatch,* 527 F.3d 1010, 1015 (10th Cir. 2008) (quoting *Williams v. Taylor (Terry Williams),* 529 U.S. 362, 380 (2000)).

Finally, regarding a claim of ineffective assistance of counsel, Section 2254(d) adds a second layer of deference.  When a federal habeas court reviews a state court's decision on a *Strickland* claim, the habeas court must grant the state court "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Harrington*,

562 U.S. at 101.  The only question for the habeas court is whether the state court had a

reasonable basis for rejecting the *Strickland* claim.  *Id.* at 105.  "The *Strickland* standard is a

general one, so the range of reasonable applications is substantial."  *Id.*

## ANALYSIS

After reviewing the motion and response, as well as the underlying files and records of

the case, I can hold an evidentiary hearing.  28 U.S.C. § 2254(d); *Townshend v. Sam*, 372 U.S.

293, 312 (1963).  To warrant such a hearing, the Petitioner must show that the hearing held in

state court was not fair or adequate.  Rules Governing Section 2254 Cases, Rule 8 Adv. Comm.

Notes; § 2254(d).  When reviewing the record in this case, including the Petition, the Answer, as

well as all the documents in the underlying criminal case, I am mindful that I must liberally

construe a pro se litigant's pleadings and hold them to a less stringent standard than pleadings

drafted by an attorney.  *Hall v. Bellman*, 935 (10th Cir. 1991) (citations omitted).  I have done so

here and have determined that no such evidentiary hearing is warranted, as the record in this

matter conclusively shows that Petitioner received a fair and adequate hearing.  I am comfortable

reaching my findings and recommendations without taking additional testimony or evidence.

1. <u>Whether the Court Should Address Unexhausted Claims or Grant Petitioner's Motion to Amend</u>

Respondents submit that Petitioner has exhausted some but not all of his claims: (1)

sufficiency of the evidence—not exhausted; (2) newly discovered evidence—partially exhausted;

(3) appellate counsel's ineffective assistance—exhausted.  Doc. 14 at 7-8.  Notwithstanding

Petitioner's alleged failure to exhaust, Respondents state that it is appropriate for the Court to

address all claims, rather than dismissing the unexhausted issues without prejudice, because it is

clear that each claim must be denied.  Doc. 14 at 12.  In his Reply, Petitioner claims that "DNA

evidence has been raised under one heading or another and not specifically as sufficiency of

evidence." Doc. 18 at 4. Therefore, he claims "this claim has been exhausted contrary to the Respondents['] arguments." *Id.* Nonetheless, by separate motion, Petitioner moves the Court to amend his claims by "deleting unexhausted claims to allow this Honorable Court to proceed in further action." Doc. 16 at 1. Petitioner would amend Ground 1, entitled "Sufficiency of the Evidence", to read simply "DNA Evidence". *Id.* at 3. And as to Ground 2, "Newly Discovered Evidence", Petitioner asks the Court to "delete the illegal search and seizure portion of the claim." *Id.* at 4. Petitioner does not seek to amend Ground 3. *Id.* at 2.

The central inquiry in an exhaustion analysis "is whether the substance of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Honie v. Powell*, __ F.4th __, __, 2023 WL 414932, at *8 (10th Cir. 2023) (citing *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012)). The Court's review of the record in this case demonstrates that Petitioner has not presented all of his arguments surrounding Grounds 1 and 2 in state court, either on direct appeal or in post-conviction proceedings. In his direct appeal to the New Mexico Court of Appeals, Petitioner argued that the DNA evidence should not have been admitted because of improper collection techniques and cross-contamination; however, Petitioner did not raise sufficiency of the evidence. *See* Doc. 14-1 at 71-114. In his Petition for Writ of Habeas Corpus filed in the Ninth Judicial District Court in Roosevelt County, Petitioner discussed DNA evidence and possible contamination, raised his ineffective assistance of counsel claims, and mentioned newly discovered information obtained post-conviction (i.e alleged criminal wrongdoing of the case agent) but failed to develop how evidence obtained from an alleged illegal search and seizure is "newly discovered", and failed to develop any cogent argument regarding sufficiency of the evidence. The Court concludes that Petitioner has exhausted some but not all of his claims.

The propriety of addressing these unexhausted issues is thus before the Court.  The principle that would suggest the case should be stayed and abated while Petitioner returns to state court to exhaust his claims is comity: "it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice in the state courts only 'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'"  *Granberry v. Greer*, 481 U.S. 129, 134 (1987) (citing *Ex parte Hawk,* 321 U.S. 114, 117 (1944)).  On the other hand, if it is "perfectly clear" that the unexhausted issue fails to raise a colorable federal claim, federal courts may deny the habeas petition in "the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts…".  *Id.* at 135.  "[T]here is a strong presumption in favor of requiring the prisoner to pursue his available state remedies, [but] his failure to do so is not an absolute bar to appellate consideration of his claims."  *Granberry*, 481 U.S. at 131.

As discussed below, the Court concludes that it is "perfectly clear" that the unexhausted issues fail to raise a colorable federal claim, and that it is appropriate for the Court to address the unexhausted issues, rather than holding these proceedings in abeyance while Petitioner exhausts them in state court.  The Court is convinced that neither unexhausted issue raises a colorable constitutional claim and addressing them now serves the interests of the individuals and entities affected.  *See Hoxsie v. Kerby*, 108 F.3d 1239, 1242-43 (10th Cir. 1997).  Accordingly, the undersigned recommends that the District Judge deny Petitioner's motion to amend.

2.  <u>Whether Sufficient Evidence, DNA or Otherwise, Supported the Convictions</u>

In Ground One, Petitioner states there was insufficient evidence to support the guilty verdicts, and asserts that questions surrounding the introduction of DNA evidence at trial support granting the Petition.  As noted above, this issue was not exhausted below, nor did the New

9

Mexico Court of Appeals consider sufficiency of the evidence. [4]   Nonetheless, Petitioner states that the results of the forensic testing demonstrate that Petitioner was eliminated from 6 of 8 tests performed on items collected from the scene, with insufficient amounts of male DNA found on the remaining two items.  Doc. 1 at 19 (citing Exhibit A, "Laboratory Report", at Doc. 1-1, 1-5). Respondents counter that there was overwhelming evidence of Petitioner's guilt and urge the Court to deny relief on this ground.  Doc. 14 at 15.

At trial, the prosecution presented the testimony of Eve Tokumaru, a Forensic Scientist at the New Mexico Department of Public Safety Forensic Laboratories.  *See* CD 09/14/17 at 15:42:33—18:59:00.  Ms. Tokumaru was qualified to offer expert testimony in the areas of serology and DNA.  *Id*. at 15:51:00.  The witness confirmed that no items in the case file were mispackaged, *id*. at 16:07:30, and was certain that cross-contamination between the evidence taken from the scene and the standards taken from the victim, defendant, or victim's boyfriend had not occurred.  *Id*. at 18:49:15.  The expert also noted that her work was confirmed by two other DNA analysts at the crime laboratory, and no errors were detected.  *Id*. at 16:50:00.

Ms. Tokumaru testified that she reviewed all items that were collected during the sexual assault examination of the victim, which included swabs of the victim (i.e. vagina, cervix, mons pubis, anus, mouth, inner thigh, both hands, and panties), *id*. at 16:17:00—16:27:00, and swabs of the Petitioner (i.e. penis, fingers and nails, gray boxer shorts, white boxer shorts).  *Id*. at 16:29:00—16:38:10.  Due to the presence of a second male's DNA on some of the evidence,

---

[4] On direct appeal, the New Mexico Court of Appeals specifically considered arguments that the district court (1) erred in failing to suppress the victim's identification of the Defendant/Petitioner; (2) abused its discretion in admitting DNA evidence; (3) failed to dismiss the case for prosecutorial misconduct; (4) erred in failing to vacate one of the CSP convictions on double jeopardy grounds; and (5) improperly enhanced the sentence with a prior felony conviction.  *See* Doc. 14-1 at 146-163.  In state habeas proceedings, the state habeas judge considered (1) ineffective assistance of trial and appellate counsel; (2) violation of due process and equal protection; (3) illegal search and seizure; (4) false arrest and false imprisonment; and (5) improper admission of contaminated DNA evidence.  *See* Doc. 14-1 at 182-257; Doc. 14-2 at 1-56.

standards were subsequently taken from the victim's boyfriend, which standards were tested alongside those of Petitioner and the victim.[5]

Ms. Tokumaru testified that, of the swabs taken from the victim, male DNA was detected on all swabs taken from the victim except the oral swab. *Id*. at 16:51:00—16:53:30. Regarding the swabs taken from the Petitioner, the expert found that the victim's DNA was present on the penile swab, and the odds that the female DNA was from someone other than the victim were 1:1.6 octillion. *Id*. at 16:58:56. The victim's boyfriend was eliminated as a contributor of DNA on Petitioner's penile swab. *Id*. at 16:59:50. The victim's DNA was also found on Petitioner's hands and fingernails, and the victim's boyfriend was eliminated as a source of DNA on those swabs. *Id*. at 17:00:25—17:01:00. The victim's DNA was found on both sets of boxer shorts collected from Petitioner, and from the neck of the liquor bottle, *see id*. at 17:02:00—17:03:30, and when the Y-STR extraction technique was utilized, Petitioner could not be eliminated from being the source of male DNA found on that bottle. *Id*. at 17:07:30. Finally, regarding the swabs taken from the victim, conventional DNA testing was unable to identify the contributor of the male DNA (given that the amount of female DNA was overwhelming), but Y-STR testing revealed that Petitioner was found to be the major contributor of male DNA on the swab taken from the victim's right hand. *Id*. at 17:19:00.

---

[5] Petitioner claims that the DNA results were discussed during trial but the actual physical copy of those results was not presented to the jury. Doc. 1 at 19. This claim is not borne out by the record. The state successfully introduced into evidence Exhibits 23, 24, 25, and 26, which were the results of DNA testing conducted on items collected during the sexual assault examinations. *See* CD 09/14/17 at 17:22:35—17:24:16 (admission of Exhibits 23-26). Here, the trial court instructed the jury to decide the case solely on the evidence received in court, *see e.g.* CD 09/11/17 at 14:48:42 and 14:49:10, and one presumes that a jury follows its instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Accordingly, one reasonably presumes that the jury in Petitioner's case considered all evidence presented to it, including the exhibits admitted during trial. *See also* CD 09/18/17 at 13:07:25 (court informing the jury that all exhibits will be made available to it). But, even if for whatever reason the paper copies were not reviewed by the jury, the record clearly demonstrates that the parties extensively examined the state's DNA witness, as well as the defense rebuttal DNA witness; the undersigned is confident that the jury was in fact fully presented with, and considered, the DNA evidence.

The defense presented its own expert witness to rebut the testimony of Ms. Tokumaru. The defense expert, Dr, Michael Spence, testified that the collection techniques employed by the sexual assault nurse violated collection standards and protocols established by the FBI, thereby creating an enormous and unnecessary risk of contamination.  CD 09/15/17 at 14:44:00.  The defense expert also criticized the testing techniques employed by the state's expert, concluding that "we can't say that the presence of DNA is not from contamination."  *Id*. at 15:41:00.  The expert concluded that "[w]e know there is cross-contamination…".  *Id*. at 16:14:00.

In addition to the competing expert testimony regarding DNA evidence, the jury heard testimony from the victim who testified that she was awakened to find herself being smothered with a pillow as her attacker forcibly raped her and struck her with a bottle.  CD 09/13/17 at 09:43:56 et seq.  After distracting the assailant and hiding the bottle in a bathroom cabinet, the victim fled to a neighbor's residence where she was described as collapsing inside the front door, folding into a fetal position on the floor, inconsolable and hysterical.  Law enforcement arrived within minutes, and shortly thereafter presented the victim with a cell-phone photo of the Petitioner; upon seeing the photo, the victim became even more frantic and frightened, and was described by the neighbor as if "she was going to climb the wall…".  *See id.* at 09:20:38—09:33:10.

Roosevelt County Sheriff's Office Deputy Chris McCasland was Case Agent and described how he arrived within 3-5 minutes of the 911 call, and after contacting the victim, he and another deputy walked to the victim's residence to search for the attacker.  CD 09/13/17 at 09:44:36—09:58:35.  McCasland described how he entered the residence but then saw through the window an individual, later identified as the Petitioner, standing outside the residence, barefoot and in his boxer shorts and light grey tank top.  *Id*. at 09:46:49—09:53:30.  McCasland

described how Petitioner was extremely intoxicated and, upon being positively identified by the victim, grew combative and resisted his arrest. *Id.* McCasland detailed the items he and another deputy collected from the residence, including a Bacardi liquor bottle located in a bathroom cabinet.

By separate witness, the prosecution also introduced surveillance video obtained from a local liquor store which shows Petitioner buying a bottle of Bacardi rum and Sprite soda earlier that evening. *Id.* at 10:09:00—10:20:40.

The prosecution presented the testimony of Tanya Burton, a Sexual Assault Nurse Examiner (SANE) who described her observations of the victim, as well as her findings from her examination. CD 09/14/17 at 10:49:23 et seq. Ms. Burton was qualified as an expert in sexual assault examinations and collection of evidence, *id.* at 11:00:00, and concluded that the injuries to the victim's vagina and anus were consistent with forcible penetration. *Id.* at 11:52:20. Ms. Burton also detailed her separate examination of the Petitioner at the detention center and the items collected therein. *Id.* at 13:45:00 et seq. Finally, the prosecution presented the testimony of a licensed clinical counselor who provided an expert opinion that the victim was experiencing complex trauma disorder, and had no recorded trauma prior to this incident. *Id.* at 10:45:30—11:52:50.

Evidence is sufficient to support a conviction so long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Stated another way, a court will not "overturn a jury's finding unless no reasonable juror could have reached the disputed verdict." *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997).

Criminal sexual penetration (CSP) is defined in New Mexico law as the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.  NMSA 1978, § 30-9-11 (2009).  CSP in the first degree includes CSP perpetrated by the use of force or coercion that results in great bodily injury or great mental anguish.  *Id*. at § 30-9-11(D)(2).

Here, the undersigned has no difficulty concluding that the evidence presented at trial was amply sufficient to sustain the jury's guilty verdicts.  Petitioner was encountered in the early morning hours at the scene of a brutal sexual assault, within minutes of a 911 call, drunk and combative.  Petitioner was captured on video purchasing a bottle of Bacardi rum which matched the bottle subsequently found in the victim's residence.  The victim positively identified the Petitioner as her attacker, and the victim's DNA was conclusively shown to be on the Petitioner's penis and hands.  The victim had injuries to her vagina and anus that were consistent with forcible penetration, whereas Petitioner had fresh abrasions on his arms, legs and belly and was clothed as described by the victim.  Furthermore, the state presented clear evidence of the victim's great mental anguish, from her collapsing into the neighbor's residence hysterical and inconsolable, as well as that of the licensed clinical counselor who provided expert testimony linking the victim's ongoing complex trauma disorder to this incident.  CD 09/15/17 at 11:04:19—11:23:00.

The evidence supporting the CSP convictions was compelling, and to the extent Petitioner points to any conflicting evidence in the record, the Court presumes that the jury resolved any such conflicts in favor of the prosecution.  *Matthews v. Workman*, 577 F.3d 1175, 1184 (10th Cir. 2009).  The undersigned concludes that a rational jury could reach verdicts of

guilty.[6]  Similarly, the undersigned concludes that the affirmance of Petitioner's convictions on

direct appeal, and the denial of his state habeas petition, were "objectively unreasonable".

*Cavazos v. Smith*, 565 U.S. 1, 4 (2011).

Lastly, Petitioner seeks to amend his claim from sufficiency of the evidence to simply

"DNA evidence", which the Court construes as a claim that the admission at trial of such

evidence was in error.  Even so, such claim must fail, as a federal court sitting in habeas is not to

review a state court's evidentiary rulings, but only reviews the case for violation of "the

Constitution, laws, or treaties of the United States."  *Romano v. Gibson*, 239 F.3d 1156, 1166

(10th Cir. 2001) (citing *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991)).[7]  For these reasons, the

undersigned recommends that the District Judge deny Petitioner's first claim.

3.  <u>Whether Petitioner is Entitled to Relief Based on Newly Discovered Evidence</u>

In Ground Two of his Petition, Petitioner argues that evidence of Deputy McCasland's

subsequent criminal case, and the fact that McCasland was allegedly not certified to use the

---

[6] In addition to CSP as charged in Counts 1 and 2 of the Superseding Indictment, Petitioner was also charged with aggravated battery, aggravated burglary and resisting arrest.  *See* Doc. 14-1 at 5-9.  The evidence presented at trial would allow a rational jury to reach guilty verdicts on these counts.  Regarding aggravated battery as charged in Count 3, testimony established that Petitioner touched and applied force to the victim, by choking her and striking her with a bottle, and with the intent to injure.  *See e.g.* CD 09/12/17 at 09:43:58—10:01:26 (victim describing details of rape, including being smothered with a cushion and struck with a bottle).  Regarding aggravated burglary as charged in Count 4, the state established that Petitioner entered the victim's residence without permission with the intent to commit CSP, which he committed once inside.  *See generally* CD 09/12/17 at 09:43:58 et seq. (victim's testimony); *see also* CD 09/13/2017 at 09:26:50 (neighbor describing how victim stated that "he kicked my door in, I was sleeping...").  And finally, Count 5 charged resisting arrest, which was clearly established by Deputy McCasland's testimony and video recording.  *See* CD 09/13/17 at 09:49:15 et seq.  Based on its detailed review of the evidence, the Court is unable to conclude that the jury's guilty verdicts were objectively unreasonable.  *See Carter*, 130 F.3d at 1439 (a court will not "overturn a jury's finding unless no reasonable juror could have reached the disputed verdict.").

[7] Nor does this case present the limited exception where a federal court sitting in habeas may review a state court's evidentiary ruling when that ruling unfairly prevents a defendant from presenting evidence that is critical to his defense.  *See Chambers v. Mississippi,* 410 U.S. 284, 302 (1973); *Green v. Georgia,* 442 U.S. 95, 97, 99 (1979).  Here, Petitioner's counsel vigorously cross-examined the state's DNA expert, and presented a rebuttal expert who offered the opinion that the DNA evidence was contaminated and not reliable and who encouraged the jury to not accept the state's evidence.  It cannot be said that the trial judge's evidentiary ruling somehow prevented Petitioner from presenting his defense or otherwise affected the fairness of the trial.

Taser that he deployed on Petitioner, is newly discovered evidence that justifies habeas relief. Petitioner also argues that various clothing items were seized from him prior to the issuance of a search warrant, but has since moved to delete this claim as he recognizes that it is not exhausted. *See* Doc. 16 at 4.  As explained below, the undersigned finds that, amended or not, this claim fails.

First, the contours of Petitioner's argument regarding Deputy McCasland are somewhat difficult to discern, but Petitioner alleges that McCasland engaged in criminal behavior from 2013-16[8], or before Petitioner's criminal trial, which criminal conduct affected McCasland's credibility as a witness.  Doc. 1 at 22.  Further, Petitioner asserts that McCasland was not certified to operate the Taser device that he deployed on Petitioner on June 16, 2016, which Petitioner concludes means that McCasland failed to perform his duties within the scope of his training or otherwise fulfill his oath to uphold the law.  *Id.*  Liberally construing Petitioner's argument, the undersigned concludes that Petitioner claims he suffered a violation of his federal constitutional right to due process of law, and to a fair trial, because the jury did not hear the details of McCasland's history.

Petitioner asserted this claim in his state habeas corpus action, and the state district court denied said claim without a hearing.[9]  Doc. 14-2 at 64-66.  In its "Pre-Appointment Review", the State of New Mexico's Post-Conviction Habeas Unit of the Law Offices of the Public Defender set forth Petitioner's claim that he would present "new reliable evidence" that was not presented at trial and that met all factors set forth in *Montoya v. Ulibarri*.[10]  While the Habeas Unit failed

---

[8] But not brought to light or charged until after Petitioner's trial.  Doc. 1 at 22.

[9] The New Mexico Supreme Court subsequently denied Petitioner's petition for writ of certiorari.  Doc. 14-2 at 174.

[10] The New Mexico Supreme Court found that New Mexico law requires the petitioner to allege facts showing that the new evidence meets all of the following requirements:

to meaningfully analyze whether Petitioner's "new evidence" meets the *Montoya v. Ulibarri* factors (including whether it is material and would probably change the result at a new trial), it did claim that appellate counsel failed to subject the prosecution's case to meaningful adversarial testing during appeal.  Doc. 14-2 at 61.  Nonetheless, after reviewing the Pre-Appointment Review, the trial judge concluded that the petition "is NOT a proceeding that a reasonable person would be willing to bring at a person's own expense",[11] and found "it plainly appears from the face of the petition that the petitioner is not entitled to relief as a matter of law."  Doc. 14-2 at 65.

When the state habeas court denies a petition with little or inadequate explanation, a federal court must nonetheless presume that the court conducted a thorough review and denied the claims on the merits.  *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (explaining that 28 U.S.C. § 2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, and determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning) (citations omitted).  Indeed, where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  *Id.*  In short, § 2254(d) sets out a most challenging road for the petitioner and requires a strong measure of deference be shown the state court decision.

---

"1. it will probably change the result if a new trial is granted; 2. it must have been discovered since the trial; 3. it could not have been discovered before the trial by the exercise of due diligence; 4. it must be material; 5. it must not be merely cumulative; and 6. it must not be merely impeaching or conclusory."  *Montoya v. Ulibarri*, 2007-NMSC-035, ⁋ 31.  A negative finding on any of the six factors is dispositive.  *See Terry v. Claypool,* 1903-NMSC-002, ⁋ 35.

[11] New Mexico's Indigent Defense Act establishes that a person has a limited right to appointed counsel in post-conviction matters, but only if the district judge in which the proceeding is brought "determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense."  N.M.S.A. 1978, § 31-16-3 (1978).

In the instant case, Petitioner has made no showing that the state court unreasonably reached its conclusion, and fails to develop any argument as to how the "newly discovered evidence"—i.e. McCasland's criminal case and/or his lack of certification to operate the Taser—would have changed the outcome of his trial.  Neither matter pertains to Petitioner's guilt or innocence or has been shown to somehow affect Petitioner's federal constitutional rights. Ultimately, the state habeas court was presented with the issue and summarily denied it.  The undersigned is unable to conclude that the state habeas court unreasonably applied clearly established federal law or otherwise relied on an unreasonable determination of the facts of the case.  28 U.S.C. § 2254(d).  As such, the undersigned recommends that the District Judge deny this claim.

Next, Petitioner claims that the items seized by the jail upon his booking, or by law enforcement incident to his arrest, were obtained in violation of the law.  Not only did Petitioner fail to file a motion to suppress such evidence, but Petitioner now admits that the items were seized pursuant to a search warrant signed by a district judge.  Doc. 1 at 23.  By so admitting, Petitioner obviates any claim that the items were somehow seized illegally.  Doc. 1 at 23. Regardless, even had Petitioner filed such a motion and assuming it had been denied by the trial judge, such evidentiary ruling could not be heard in federal habeas unless it can be shown that the ruling affected the Petitioner's federal constitutional rights.  *See Romano,* 239 F.3d at 1166. Whether by waiver due to Petitioner's failure to raise the claim in state court, or because trial court evidentiary rulings are generally not reviewed in federal habeas, Petitioner's claim of "illegal search and seizure" necessarily fails.  The undersigned recommends that the District Judge deny Petitioner's motion to amend and deny this claim.

4.  <u>Whether Petitioner Received Effective Assistance of Counsel</u>

18

In Ground Three, Petitioner argues that trial and appellate counsel were ineffective. Petitioner asserts five separate claims that Respondents agree were fully exhausted in state court. Doc. 14 at 8.  In order to prevail, Petitioner must demonstrate both that "counsel's representation fell below an objective standard of reasonableness," and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  For the first prong, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  To show prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In its review, this Court must afford the underlying state decision great deference. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (discussing "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt")); 28 U.S.C. § 2254(d). The question under consideration is whether denial of habeas relief by the state district court was objectively unreasonable.  *Cf. Williams v. Taylor*, 529 U.S. 362, 409 (2000) (court must ask 'whether the state court's application of clearly established federal law was objectively unreasonable.").

First, Petitioner claims that trial counsel failed to discover an alleged illegal search and seizure.  Doc. 1 at 24.  As noted above, Petitioner undercuts his claim by acknowledging that law enforcement obtained and executed a search warrant, *id.* at 23, although Petitioner emphasizes that said warrant was not signed until *after* certain items were seized.  *Id.*  Petitioner overlooks the fact that his clothing items were lawfully removed from him at the time he was booked into the detention facility, and that searches and removal of civilian clothes have generally been

found to reasonably serve a policy that aims to prevent contraband from entering detention facilities.  *See Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328-29 (2012).  And by submitting and obtaining a warrant to seize these items, law enforcement demonstrated probable cause to seize the clothing items.  There was nothing to suggest that the subsequent seizure was "illegal".  The undersigned sees no merit to Petitioner's claim that counsel was ineffective for failing to challenge the seizure of his clothes, and recommends that it be denied.

Second, Petitioner claims trial counsel was ineffective for not challenging the admissibility of his post-arrest interrogation, by asserting that "Sheriffs never allowed the petitioner to have counsel present during their questioning."  Doc. 1 at 24.  Petitioner fails to demonstrate that he ever requested counsel after the commencement of the interview, and overlooks the fact that law enforcement officers clearly advised him of his *Miranda* warnings prior to the start of questioning, including his right to cease questioning at any time.  *See* CD 09/13/17 at 15:42:09; 15:45:10—15:45:48.  The undersigned has meticulously reviewed the record in this case, has listened to all trial recordings, and concludes that Petitioner suffered no violation of his constitutional rights as it relates to his post-arrest interrogation; trial counsel was not ineffective for failing to challenge the admissibility of his in-custody statements based on a claim that Petitioner lacked (or otherwise demanded) counsel when he gave them.  Because the facts don't support Petitioner's claim that counsel's failure to challenge the admissibility of the post-arrest interrogation was deficient in any way, the undersigned recommends that the District Judge deny this claim.

Third, Petitioner asserts his trial counsel was ineffective for failing to highlight that another man, Silver Lucero, was present at the scene and would have testified that he saw a third

man leaving the victim's front door when he dropped Petitioner off at his paramour's residence. Doc. 1 at 24. Petitioner asserts that Mr. Lucero would have contradicted the victim's testimony that she had not spoken to an individual outside her residence. *Id*. Petitioner admits that trial counsel utilized an investigator to attempt to locate this individual, but these investigatory efforts were ultimately fruitless. Nonetheless, Petitioner fails to establish, or even argue, how the absent individual's testimony would have been exculpatory to him. Given that Petitioner is unable to establish either counsel's deficient performance or any prejudice, the undersigned recommends the District Judge deny this claim.

Fourth, Petitioner complains that appellate counsel had "minimum" communication with him during the appeal. Doc. 1 at 25. The undersigned recognizes that appellate counsel has a duty to communicate with her client, and defendants have a right to effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). Nonetheless, it is widely recognized that there is a "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 691. Furthermore, the role of appellate counsel is distinct from that of trial counsel, and while some communication by appellate counsel is certainly expected, a lawyer's work on appeal is steeped in reviewing records, reading transcripts, and conducting legal research as distinct from developing a trial strategy with the client based on the evidence. The Supreme Court reminds us that "judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." *Strickland,* 466 U.S. at 689. Because Petitioner has failed to overcome the "strong presumption" that his lawyer on appeal provided reasonable professional assistance, *id.* at 689, the undersigned recommends that the District Judge deny Petitioner's claim to the contrary.

Finally, Petitioner vaguely asserts that both trial and appellate counsel "hindered" him, presumably by not providing full discovery materials and thereby impacting his ability to adequately present his claims to either the state or federal habeas court.  Petitioner claims this hindrance amounts to a "due process violation in itself."  Doc. 1 at 25.  As with the prior claim regarding appellate counsel's alleged failure to communicate, here Petitioner fails to develop any argument about how the actions of his lawyers otherwise "hindered" his legal case.  The Court may not do so for Petitioner.  *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (while a court will liberally construe a *pro se* litigant's brief, it cannot act as their advocate or fashion their arguments for them).  The undersigned notes that Petitioner was able to timely file the instant Petition in federal court and attach various records to it; importantly, Petitioner doesn't claim anything is missing.  Rather, in conclusory fashion, Petitioner claims he was hindered "from filing both his state and federal habeas corpus petitions properly due to the lack of material to reference his current arguments to."  Doc. 1 at 25.  Without more, the undersigned is unable to fully analyze just what material is missing, let alone how Petitioner's arguments have not been presented properly.  Petitioner fails to establish any deficient performance of counsel, let alone how he suffered any prejudice of a constitutional proportion.  Accordingly, the undersigned recommends that the District Judge deny Petitioner's claim that his lawyers somehow hindered the presentation of his case.

The undersigned's review of the record demonstrates that trial counsel presented a reasonable theory of the case which focused the jury's attention on his argument that the evidence presented by the prosecution was improperly collected and subsequently contaminated, and therefore unreliable.  The record demonstrates that trial counsel approached each witness in furtherance of this theory.  Overall, trial counsel's decisions appear to have been made

22

thoughtfully, and while there often may not be a single "correct" decision, the strategy furthered

by counsel can not be said to be unreasonable.  This Court is not in a position to second-guess

state court conclusions that are reasoned and supported by the record evidence.  Accordingly, the

undersigned recommends that the District Judge deny Petitioner's claims based on ineffective

assistance of counsel.

     5.   <u>The Court Recommends Against Issuing a Certificate of Appealability</u>

     Under Rule 11 of the Rules Governing Section 2254 Cases, the Court must issue or deny

a Certificate of Appealability (COA) whenever it enters a final order adverse to the § 2254

petitioner.  *See* Habeas Corpus Rule 11(a).  A COA may issue only upon "a substantial showing

of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*,

529 U.S. 473, 484 (2000) (stating that to obtain a COA, a petitioner must "demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable

or wrong").  The undersigned concludes that Petitioner has not made such a showing and

therefore recommends against the issuance of a COA.

<b><u>CONCLUSION AND RECOMMENDATION</u></b>

     A meticulous review of the record fails show that the adjudication of Petitioner's case

resulted in a "decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or resulted in

a decision that was based on an "unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).  In denying habeas relief, the

State district judge reasonably applied clearly established law to the evidence in Petitioner's

case, and this Court is not in a position to find otherwise.  Accordingly, the undersigned

concludes that, under the deferential standard set forth in the AEDPA, the petition for a writ of habeas corpus should be denied.

For all of the foregoing reasons, the undersigned finds that Petitioner Roy Brown's *Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody* is not well-taken and recommends that it be **DENIED** and **DISMISSED WITH PREJUDICE.**  I further recommend that a certificate of appealability (COA) be **DENIED**.

_____
JOHN F. ROBBENHAAR
United States Magistrate Judge

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---